**MARTIN MARIETTA CORPORATION,**
**Plaintiff–Appellee,**

v.

**INTERNATIONAL TELECOMMUNICATIONS SATELLITE ORGANIZATION, Defendant–Appellant.**

**No. 92–1094.**

United States Court of Appeals,
Fourth Circuit.

Argued June 3, 1992.

Decided Oct. 21, 1992.

As Amended May 5, 1993.

William Dill Rogers, Arnold & Porter, Washington, D.C., argued (Douglas A. Dworkin, Eric A. Rubel, Matthew Frumin, Arnold & Porter, Washington, D.C., and J. Hardin Marion, and William W. Carrier, III, Tydings & Rosenberg, Baltimore, Md., on brief), for defendant-appellant.

Andrew Lewis Frey, Mayer, Brown & Platt, Washington, D.C., argued (Evan M. Tager, Donald M. Falk, Mayer, Brown & Platt, Washington, D.C., and Benjamin R. Civiletti, James A. Dunbar, and John A. McCauley, Venable, Baetjer & Howard, Baltimore, Md., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Martin Marietta agreed to launch a satellite for the International Telecommunications Satellite Organization (INTELSAT), but the satellite ended up in a useless orbit. Martin Marietta then sought a declaratory

judgment that it owed INTELSAT nothing under the agreement between the parties, and INTELSAT counterclaimed for negligence, negligent misrepresentation, gross negligence, and breach of contract. Martin Marietta moved to dismiss INTELSAT's counterclaims for failure to state a claim upon which relief may be granted, under Federal Rule of Civil Procedure 12(b)(6), and the district court granted the motion as to all of INTELSAT's claims. Finding that INTELSAT has stated two claims upon which relief may be granted, breach of contract and gross negligence, we affirm in part, reverse in part, and remand.

I

Martin Marietta and INTELSAT reached an agreement under which Martin Marietta would launch two satellites for INTELSAT. The relevant provisions of the parties' contract follow. In Article 2, Martin Marietta contracted to "make its Best Efforts to furnish Launch Services for the purpose of delivering INTELSAT's payload into orbit." In Article 1.2, the parties defined "Best Efforts" as "[d]iligently working in a good and workman-like manner as a reasonable, prudent manufacturer of launch vehicles and provider of Launch Services." Article 6 was entitled "Best Efforts Replacement Launch." Article 6.1 stated, "INTELSAT may request a Replacement Launch in the event that following any Launch under this Contract, the Titan III Mission or the Payload Mission has not been accomplished for any reason." In Article 6.7, the parties stated that a replacement launch "shall be the sole and exclusive remed[y] of the Buyer from Martin Marietta in the event the Titan III mission fails for any reason." Article 17 was entitled "Allocation of Certain Risks." In Article 17.1, the parties agreed that:

The following risks, arising out of or incident to the Launch Services to be provided by Martin Marietta and its subcontractors at every tier under this Contract are allocated between INTELSAT and Martin Marietta as set forth in this ARTICLE 17, notwithstanding any other provision of this Contract.

Article 17.5.1 provided:

Martin Marietta and INTELSAT agree that, with respect to injury to or death of persons involved in, or damage to property used in connection with, Launch Services to be furnished under this Contract, neither Party will make any claim against the other ..., and each Party shall bear its own risk of loss with respect to injury to or death of its own employees or damage to its own property howsoever caused.

Article 17.6, entitled "Limitation of Liability," stated:

Martin Marietta's liability to INTELSAT ... whether or not arising under contract, or in negligence, strict liability, or under any other theory of tort or liability, shall not include any loss of use or loss of profit or revenue or any other indirect, special, incidental or consequential damages. In no event shall Martin Marietta's liability to INTELSAT for any claim arising out of a particular Launch Services exceed the price for that Titan III Launch Services to be paid by INTELSAT ..., provided however that nothing in this paragraph shall affect any right of INTELSAT to a Replacement Launch ... under Article 6....

Finally, Article 21 specified that the contract was to be governed by Maryland law.

The first launch was unsuccessful. The satellite failed to separate from the launch vehicle when it was supposed to, due to Martin Marietta's wiring mistake. Eventually, INTELSAT separated the satellite from the launch vehicle, but the process of doing so (which involved separating the satellite from its booster rocket) made it impossible for the satellite to attain its proper orbit. The satellite is the one that the National Aeronatics and Space Administration (funded by INTELSAT) recently rescued. The second launch the parties contracted for, which involved another satellite, was successful.

After INTELSAT threatened to sue over the first launch, Martin Marietta filed a declaratory judgment action in the District

of Maryland, seeking a declaration that it owed INTELSAT nothing under their contract. INTELSAT counterclaimed for breach of contract, negligence, gross negligence, and negligent misrepresentation. INTELSAT sought $400 million in damages for the lost value of the launch services, the lost use of the satellite, lost profit, damage to the satellite, and the cost of rescuing the satellite. Martin Marietta then made a 12(b)(6) motion to dismiss the counterclaims. The district court granted the motion to dismiss the tort claims in April 1991, in an opinion published in edited form in May 1991, *Martin Marietta Corp. v. INTELSAT*, 763 F.Supp. 1327 (D.Md. 1991), and granted the motion to dismiss the breach of contract claim in November 1991, in an unpublished opinion.

As to INTELSAT's negligence and negligent misrepresentation claims, the district court held that INTELSAT had not shown a tort duty of due care distinct from the duties the contract between the parties created. As for gross negligence, the district court held that the Commercial Space Launch Act Amendments of 1988 established a federal policy that overrode Maryland's common law rule that parties ordinarily cannot waive liability for gross negligence. Later, in ruling on the breach of contract claim, the district court held that the parties' contract clearly and unambiguously barred a breach of contract action. Citing Article 6.7 of the contract, the court reasoned that INTELSAT's sole remedy for a "mission failure" was a replacement launch and that the satellite's failure to separate from the rocket at the proper time constituted a "mission failure." The court also quoted Article 17.6 (the Limitation of Liability section) and stated that "[h]ere, again, the contract unambiguously bars any contract claim beyond that permitted in Article 6." J.A. at 656.

## II

■ We first consider the breach of contract claim, bearing in mind that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the claims must be construed in the light most favorable to the non-moving party and its allegations taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). Most importantly, dismissals for failure to state a claim are reviewed *de novo* on appeal. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989). INTELSAT's theory is that Martin Marietta breached its obligation to use its "best efforts," a duty established in Article 2 of the contract and defined in Article 1. The district court found that the contract clearly and unambiguously barred that claim. As the district court noted, the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim. *Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir.1972).

■ After our required *de novo* review, we find that the contract is not free from ambiguity and that the district court erred in granting Martin Marietta's motion to dismiss.

While, as a matter of common sense, it seems reasonable to label what happened as a "mission failure," INTELSAT argues that its claim is not for mission failure, but for failure of separation of the Titan III payload and booster. With the parties' contract and Interface Control Document silent on this point, the district court erred in accepting Martin Marietta's construction of the contract.

The district court found that the "Limitation of Liability" provision in Article 17 unambiguously barred any contract claim other than the replacement launch remedy in Article 6. INTELSAT claims that the contract is ambiguous because Article 6.7 states that a replacement launch is INTELSAT's "sole and exclusive" remedy, while the Article 17 "Limitation of Liability" provision put a damages cap on claims "arising under contract, or in negligence, strict liability, or under any other theory of tort or liability." INTELSAT argues that an Article 6 replacement launch could not be

an exclusive remedy when Article 17 recognized the possibility of other claims, especially when Article 17 stated that it would govern the allocation of risks between the parties "notwithstanding any other provision of this Contract." At the very least, INTELSAT contends, the two articles together create an ambiguity precluding dismissal.

Martin Marietta argues that the statement in the Article 17 "Limitation of Liability" provision that it did not affect INTELSAT's right to an Article 6 replacement launch shows that the two provisions are independent, and that the exclusive remedy language in Article 6 controls. On the other hand, INTELSAT argues based on the same provisions that a replacement launch and a breach of contract claim are not mutually exclusive, and that Article 17 controls. We disagree with the district court's conclusion that the interplay of the two provisions is unambiguous. Martin Marietta certainly could have included clearer language, if it intended at the time of contracting to limit INTELSAT's remedy in the way it now argues.

Alternatively, Martin Marietta offers an explanation of this apparent ambiguity. Martin Marietta argues that the Article 6 replacement launch remedy is the exclusive remedy when there have been post-launch damages, because Article 6 only applies "following any launch." *See* Art. 6.1. Under Martin Marietta's construction, the Article 17 "Limitation of Liability" provision applies to pre-launch damages such as "efficient breach" (a refusal by Martin Marietta to go forward). However, while Martin Marietta's interpretation plausibly harmonizes the two articles, the contract is far from crystal clear and never refers to "pre-launch" or "post-launch" damages or otherwise mandates Martin Marietta's interpretation.

In light of these ambiguities, it does not appear beyond doubt that INTELSAT can prove no set of facts constituting breach of Martin Marietta's contractual duty to use its "best efforts," and we must therefore reverse the district court's dismissal of INTELSAT's breach of contract claim. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102.

## III

### A.

█ As to INTELSAT's negligence and negligent misrepresentation claims, we agree with the district court's analysis of Maryland law and reasons for dismissal:

Equally sophisticated parties who have the opportunity to allocate risks to third party insurance or among one another should be held to only those duties specified by the agreed upon contractual terms and not to general tort duties imposed by state law.

. . . .

... Consistent with the Court's discussion of whether tort duties are applicable in contractual relationships, Maryland law holds that a claim for negligent misrepresentation is improper when, as here, the only relationship between the parties is contractual, both parties are equally sophisticated, and the contract does not create an express duty of due care in making representations.

The case before the Court does not present circumstances in which the law creates a tort duty of due care independent from the parties' contractual relationship. Such tort duties of care with respect to representations are imposed by courts to protect a peculiarly vulnerable party. In particular, such duties are imposed in the context of a patient's or client's dealings with a professional in whom one places a great degree of personal trust and confidence—such as a physician, an attorney, an architect or a public accountant. No such relationship of special trust exists here. Nor is INTELSAT an unsophisticated consumer, unfamiliar with the subject matter of the contract, who relied on the representations of someone holding himself or herself out as possessing special expertise.

763 F.Supp. at 1332–33 (citations omitted). We therefore affirm the dismissal of INTELSAT's negligence claim on the basis of the district court's reasoning.

█ INTELSAT's negligent misrepresentation argument raises two points worth further discussion. First, INTELSAT relies on *Maryland–Nat'l Capital Park and Planning Comm'n v. Washington Nat'l*

*Arena,* 282 Md. 588, 386 A.2d 1216 (1978). There, in upholding a noncontestability clause in a lease, the court held that "unless clearly prohibited by statute, contractual limitations on judicial remedies will be enforced, absent a positive showing of fraud, misrepresentation, overreaching, or other unconscionable conduct on the part of the party seeking enforcement." *Id.* at 1231. INTELSAT argues that the *Arena* court intended "misrepresentation" to include negligent misrepresentations, but we must disagree, because negligent misrepresentations do not rise to the level of "fraud," "overreaching," or "unconscionable conduct."

■ Second, INTELSAT argues that the Article 6 "Replacement Launch" provision should *not* apply because INTELSAT only approved the fated launch, which triggered Article 6, in reliance on Martin Marietta's post-contract misrepresentations. INTELSAT reasons that an exclusion of remedy provision is invalid when one party's misrepresentations induced the other to take an action that caused the provision to take effect. However, Maryland law will enforce exclusion of remedy provisions unless one party's misrepresentations have induced the other party to *enter* into the contract in the first place. *Id.*

The two Maryland cases INTELSAT cites do not support its theory that post-contract misrepresentations may also invalidate contractual limitations on remedies. First, because *Weisman v. Connors,* 312 Md. 428, 540 A.2d 783, 792 (1988), only involved pre-contractual misrepresentations, we do not believe that case fairly supports INTELSAT's theory. Next, INTELSAT quotes from a footnote in *Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 439 A.2d 534, 539 n. 7 (1982):

Appellees have also argued that even if negligent misrepresentation is a viable tort action in this State, it can never be applied to statements made in connection with consummation of an arm's length transaction, as was involved in the present case. We find nothing in *Virginia Dare* or its progeny to support such a sweeping assertion and we reject it.

The statement in *Martens Chevrolet* only refers to the "consummation" of an arm's length transaction. Here, INTELSAT is relying on negligent misrepresentations made after the parties signed a contract. The same footnote in *Martens Chevrolet* also quoted a New York Court of Appeals statement:

A party to a contract cannot, by misrepresentation of material fact, induce the other party to the contract to enter into it to his damage, and then protect himself from the legal effect of such misrepresentation by inserting in the contract a clause to the effect that he is not to be held liable for the misrepresentation which induced the other party to enter into the contract.

*Id.* (quoting *Jackson v. State,* 241 N.Y. 563, 150 N.E. 556 (1925)). That court also referred to "enter[ing] into" a contract, while INTELSAT's theory rests on statements made after the parties reached their contract. Therefore, the cases INTELSAT relies on are inapposite, and we have not found any authority that is more helpful. Because INTELSAT's negligent misrepresentation arguments are without support, and in view of Maryland law on tort duties arising out of contractual relationships, we affirm the district court's dismissal of this claim.

**B.**

■ Finally, we consider INTELSAT's gross negligence claim. Initially, Martin Marietta questions whether Maryland law invalidates contractual waivers of liability in cases of gross negligence where the parties are of equal bargaining power. INTELSAT relies on two decisions by the Maryland Court of Special Appeals: *State Highway Admin. v. Greiner Eng'g Sciences,* 83 Md.App. 621, 577 A.2d 363 (Md. Ct.Spec.App.), *cert. denied,* 321 Md. 163, 582 A.2d 499 (1990); and *Boucher v. Riner,* 68 Md.App. 539, 514 A.2d 485 (Md.Ct. Spec.App.1986). In *Greiner,* the court held that an unambiguous no-damage-for-delay clause was enforceable. Then the Court noted:

This is not to say that unambiguous no-damage-for-delay clauses will be enforced in every case. The better reasoned approach does not enforce the ex-

culpatory clause where there is "intentional wrongdoing or gross negligence," "fraud or misrepresentation," on the part of the agency asserting the clause. No such wrongdoings were alleged in this case.

*Greiner,* 577 A.2d at 372 (citations omitted). The earlier case, *Boucher,* involved a customer who sued the inaptly named "Parachutes Are Fun, Inc." after he parachuted into power lines. Boucher argued that the exculpatory agreement he signed did not shield Parachutes Are Fun from liability for gross negligence. The court agreed, holding that "[a] waiver of a right to sue, such as the one executed between Boucher and Parachutes, is ineffective to shift the risk of a party's own willful, wanton, reckless, or gross conduct." *Boucher,* 514 A.2d at 488. *Boucher* is a further indication that, under Maryland law, a party to a contract cannot waive liability for gross negligence.

Martin Marietta tries to distinguish *Boucher* in two ways. First, Martin Marietta argues that *Boucher* involved parties of unequal bargaining power. Boucher signed a standard preprinted form containing an exculpatory clause, while Martin Marietta and INTELSAT negotiated a complex agreement. In response, we note that the language in *Boucher* is broad and not limited to parties of unequal bargaining power, and that the facts and the court's language in *Greiner* also undercut Martin Marietta's argument. Second, Martin Marietta argues that *Boucher* established a very high standard for gross negligence (wanton or reckless disregard) that the plaintiff failed to satisfy on facts more egregious than the facts in this case. However, there is no doubt that INTELSAT sufficiently alleged gross negligence so as to survive a 12(b)(6) motion. *See* Transcript of Oral Argument at 99, J.A. at 524. Whether INTELSAT convinces a jury that Martin Marietta was grossly negligent, or even survives summary judgment, is another question.

Although recognizing *Boucher* to be the law of Maryland, the district court held that Congressional intent, as reflected in the 1988 Amendments to the Commercial Space Launch Act ("CSLA"), 49 U.S.C.App. §§ 2601–2623, required the court to interpret the parties' contract to preclude claims of gross negligence. 763 F.Supp. at 1333–34. We find absolutely no support for the court's conclusion that the CSLA 1988 Amendments overrode *Boucher,* because the parties' contract was signed in 1987, more than one year before Congress passed the Amendments. Even if the CSLA Amendments could apply retroactively, neither the language of the Amendments nor their legislative history reflects a Congressional intent to protect parties from liability for their own gross negligence. Accordingly, we hold that the district court erred in dismissing INTELSAT's gross negligence claim.

As we have upheld the dismissal of INTELSAT's negligence and negligent misrepresentation claims, but overturned the dismissal of INTELSAT's breach of contract and gross negligence claims, the judgment of the district court is hereby

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.