**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALEXANDRIA RESIDENT COUNCIL,
INCORPORATED,
<u>Plaintiff-Appellee,</u>

v.

SAMUEL MADDEN HOMES TENANT
COUNCIL, a/k/a Samuel Madden

No. 97-2501

Homes Cooperative, Incorporated,
<u>Defendant-Appellant,</u>

and

ALEXANDRIA REDEVELOPMENT &
HOUSING AUTHORITY,
<u>Defendant.</u>

ALEXANDRIA RESIDENT COUNCIL,
INCORPORATED,
<u>Plaintiff-Appellee,</u>

v.

ALEXANDRIA REDEVELOPMENT &
HOUSING AUTHORITY,

No. 97-2502

<u>Defendant-Appellant,</u>

and

SAMUEL MADDEN HOMES TENANT
COUNCIL, a/k/a Samuel Madden
Homes Cooperative, Incorporated,
<u>Defendant.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-97-427-A)

Argued: June 3, 1998

Decided: July 22, 1998

Before NIEMEYER and HAMILTON, Circuit Judges, and
FABER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Horace McClerkin, Alexandria, Virginia; Michael Jay
Weiser, Alexandria, Virginia, for Appellants. Paul Anthony Fiscella,
Alexandria, Virginia, for Appellee. **ON BRIEF:** Victor M. Glasberg,
Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case involves a turf war between two "resident councils," each
purporting to represent tenants of a public housing project in Alexan-
dria, Virginia, the Samuel Madden Downtown Homes (the Downtown
Homes), which is scheduled to be demolished. After Appellant Alex-
andria Redevelopment and Housing Authority (ARHA), the public
housing authority for the City of Alexandria, offered to allow Appel-
lant Samuel Madden Homes Tenant Council (SMHTC) to purchase
the Downtown Homes pursuant to 42 U.S.C. § 1437p(b) and 24
C.F.R. § 970.13, Appellee Alexandria Resident Council, Inc. (ARC)

2

sued for a declaration that ARC was the entity entitled to receive an offer of first refusal to purchase the Downtown Homes. ARHA and SMHTC are appealing from the district court's grant of ARC's motion for summary judgment, and from the district court's denial of SMHTC's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and for relief from judgment under Federal Rule of Civil Procedure 60(b)(6). We affirm.

I

The housing project at issue in this case is a complex called the Samuel Madden Homes, a 166-unit brick townhouse development in Old Town Alexandria. ARHA owns and manages the complex, and leases the units at reduced rates to eligible low-income persons, and receives rent subsidies from HUD. This action involves a 100-unit portion of the Samuel Madden Homes known as the"Downtown Homes" which ARHA has determined should be demolished.[1]

When a local housing authority (HA) wishes to sell, demolish or otherwise dispose of a public housing project, the HA must apply to the Secretary of HUD for approval. See 42 U.S.C. § 1437p. To receive approval, the HA is required, inter alia , to consult with the tenants and resident councils that will be affected by the demolition or disposition, and to give the resident council of the project the opportunity to purchase the project. See 42 U.S.C. § 1437p(b)(1); 24 C.F.R. § 970.13. If the affected housing project does not have an existing resident council, the regulations require the HA to make reasonable efforts to inform the residents of their opportunity to organize and purchase the property. See 24 C.F.R.§ 970.13(b).

Resident councils[2] are organizations comprised of the residents of public housing projects, and are intended to work with the local HA to help create a positive living environment for public housing resi-

_____

[1] The other portion of the Samuel Madden Homes, which is not set for demolition and is not at issue in this case, consists of sixty-six units some three blocks from the Downtown Homes and is known as the "Uptown Homes."
[2] The terms "resident council" and "tenant council" are equivalents and may be used interchangeably. See 24 C.F.R.§ 964.3(e).

3

dents. See generally 24 C.F.R. Part 964. The HUD regulations define two types of resident councils: (1) the "jurisdiction-wide" or "HA-wide" resident council, which represents the interests of all residents residing under an HA's jurisdiction, see 24 C.F.R. § 964.105; and (2) the "local" resident council, the purpose of which is to improve the quality of life and resident satisfaction and sponsor self-help initiatives to enable residents of a complex to create a positive living environment, see 24 C.F.R. § 964.100. The role of the HA-wide council is to advise the HA in all areas of public housing operations, including but not limited to occupancy, management, maintenance, security, resident training and employment, social services and modernization priorities. See 24 C.F.R. § 964.105(b). Local resident councils, on the other hand, represent residents in a local housing community, although the definition of a local resident council is quite loose. See 24 C.F.R. § 964.115(a) (stating that a local resident council can represent residents residing in scattered site buildings, areas of contiguous row houses, in one or more contiguous buildings, in a development, or in a combination of these buildings or developments).

ARC is a resident council that represents public housing residents throughout Alexandria. ARC was formed in 1988 to represent all of Alexandria's public housing tenants, except for those at the Ladrey Seniors Highrise (Ladrey) who were already represented by the Ladrey Advisory Council (LAC).[3] ARC's articles of incorporation and by-laws establish a five-member board of directors that is elected by the housing projects' residents for three-year terms. The articles and by-laws also provide for the recall of board members by a majority vote of residents eligible to vote. Prior to the formation of SMHTC described below, there were no other resident councils in existence in Alexandria besides ARC and LAC.

Since its formation, ARC has acted as the local resident council for all housing projects in Alexandria except Ladrey. In this capacity, ARC has conducted self-help programs such as crime patrols, anti-drug sit-ins, anti-loitering campaigns, prayer vigils, cookouts and

---

[3] The record indicates that ARHA has 900 public housing units in Alexandria, of which 200 are represented by LAC. That means, of course, that ARC represents 700 units, 100 of which are in the Downtown Homes.

4

community days. However, because ARC represents the vast majority of public housing residents in Alexandria, ARC also has attributes of, and has acted as, the HA-wide resident council. In this capacity, ARC has worked with ARHA to obtain annual inspections and has held periodic meetings with ARHA regarding maintenance. As a result, ARC appears to have acted simultaneously as both an HA-wide resident council and a local resident council.

For nearly ten years, ARHA has continually recognized and treated ARC as the local resident council representing the Downtown Homes. ARHA has provided ARC with a vacant unit in the Samuel Madden Homes for use as an office, and has always provided ARC with per-unit funding that included the Downtown Homes. Moreover, in 1989, ARHA entered into a "Cooperation Agreement" with ARC that explicitly identified ARC as the "officially recognized resident organization." (J.A. 172). In 1991, ARHA and ARC entered into a Memorandum of Understanding that set forth the terms of their partnership agreement regarding the provision of programs and services to the public housing residents ARC represents. That Memorandum of Understanding was only the first of several such agreements, the latest one having been concluded on December 17, 1996. This latest Memorandum of Understanding established as one of its five "goals" "[t]o make available to ARC (in accordance with HUD's regulations when pre-existing conditions provide for the sale of any ARHA property, first right of refusal to purchase." (J.A. 21) (unmatched parentheses in original).

In 1994, ARHA convened a task force to study the options regarding the "redevelopment" or "rehabilitation" of the Downtown Homes. "Redevelopment" is a euphemism which implies that the housing complex will be destroyed or otherwise converted to non-public housing, whereas "rehabilitation" implies that the complex will be remodeled. In this context, the residents of a "redeveloped" public housing project are displaced, while residents of a "rehabilitated" complex typically return to their homes once the remodeling is completed. ARC favored rehabilitating the Downtown Homes, but the task force was divided. On March 25, 1996, ARHA voted to redevelop the Downtown Homes.

Despite having already recognized ARC as the resident council representing the Downtown Homes, on August 15, 1996, ARHA

5

issued a "Notice of Opportunity to Organize" to the residents of the Downtown Homes, stating that "[b]ecause ARC represents all ARHA public housing residents, ARC does not qualify as the resident organization representing [Downtown Homes] residents." (J.A. 209). On September 20, 1996, five residents of the Downtown Homes formed the Samuel Madden Homes Cooperative, Inc., specifically for the purpose of organizing an attempt to buy the Downtown Homes. The newly-formed group claimed to represent a majority of the Downtown Homes residents. ARC, however, also claimed to represent a majority of the Downtown Homes residents, and advised ARHA in writing of its intention to exercise its right of first refusal to purchase the homes.

ARHA then attempted to verify which organization held the support of a majority of Downtown Homes residents. ARHA found that each organization listed in support of its representation thirty-seven residents' names that also appeared on the other organization's list. After those thirty-seven names were stricken from the lists, neither organization held a majority. ARHA indicated it would seek guidance from HUD as to which organization represented the Downtown Homes.

The parties dispute what recommendation ARHA received, but ARHA subsequently notified both ARC and the Samuel Madden Homes Cooperative by letter that ARHA would recognize neither organization as the resident council for the Downtown Homes because neither group represented a majority of the Downtown Homes' residents. The letter concluded that the best course was for the Samuel Madden residents to represent themselves by forming their own resident council.

On February 26, 1997, ARHA sent a letter to the Downtown Homes residents urging them to form their own resident council. That same day, ARHA notified the Downtown Homes residents that an election of officers for a new resident council would take place on March 31, 1997. At the election, the same five residents who had formed the Samuel Madden Homes Cooperative formed SMHTC and elected each other as SMHTC's officers.[4]  On April 18, 1997, ARHA

_____

[4] There is no evidence to indicate that anyone other than these five residents voted in this election.

6

issued to SMHTC a notice of opportunity to purchase the Downtown Homes. ARHA did not issue such a notice to ARC.

ARC filed this action against ARHA in the United States District Court for the Eastern District of Virginia on March 27, 1997, alleging, pursuant to 42 U.S.C. § 1983, that ARHA's refusal to give ARC the opportunity to buy the Downtown Homes was a violation of its members' legal rights under 42 U.S.C. § 1437p(b) and 24 C.F.R. § 970.13, and a breach of the latest Memorandum of Understanding formed between ARC and ARHA. Specifically, the complaint alleged that ARC was entitled under contract, federal statute and HUD regulations to receive an offer of first refusal to purchase the Downtown Homes. The complaint sought, among other related relief, a declaration that ARC was the recognized and duly-elected resident council for the Downtown Homes, entitled to receive the right of first refusal.

On April 28, 1997, SMHTC filed a motion to intervene as a party defendant, which the district court granted on May 16, 1997. On July 17, 1997, ARC filed a motion for summary judgment. On August 8, 1997, the district court heard oral argument on the motion for summary judgment and took the matter under advisement. On August 28, 1997, SMHTC filed a motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that (1) the action was equitably moot since ARHA had already offered the Downtown Homes to SMHTC, and (2) ARC was not entitled to purchase the Downtown Homes because ARC was not a validly organized resident council under the regulations.

The parties strenuously disagreed on ARC's proper classification. ARHA and SMHTC argued that, because ARC represents the vast majority of all public housing residents in Alexandria, ARC must be considered to be an HA-wide resident council. According to ARHA and SMHTC, under 42 U.S.C. § 1437p(b)(1) and 24 C.F.R. § 970.13, HA-wide councils such as ARC are not entitled to receive first refusal offers to purchase housing units slated for demolition or disposition.[5]

_____

[5] Section 1437p of 42 U.S.C. provides, in pertinent part:

> The Secretary may not approve an application [to dispose of a public housing project] unless--

7

ARC, on the other hand, argued it is merely a local resident council that happens to represent several housing complexes. According to ARC, it cannot be considered to be an HA-wide resident council because it does not represent all public housing units in Alexandria.

In a published Memorandum Opinion and Order dated September 24, 1997, the district court granted ARC's motion for summary judgment and denied SMHTC's motion to dismiss. See Alexandria Resident Council v. Alexandria Redevelopment & Hous. Auth., 979 F.

_____

(1) the application from the public housing agency has been developed in consultation with tenants and tenant councils, if any, who will be affected by the demolition or disposition, and the tenant councils . . . of the project or portion of the project covered by the application, if any, have been given appropriate opportunities to purchase the project or portion of the project covered by the application . . . .

42 U.S.C. § 1437p(b)(1). Section 970.13 of 24 C.F.R. provides, in pertinent part:

(b) Opportunity for residents to organize. Where the affected development does not have an existing resident council . . . at the time of the [public housing authority's] proposal to demolish or dispose of the development or a portion of the development, the [public housing authority] shall make a reasonable effort to inform residents of the development of the opportunity to organize and purchase the property proposed for demolition or disposition. . . .

(c) Established Organizations. Where there are duly formed resident councils . . . at the affected development, the [public housing authority] shall follow the procedures beginning in paragraph (d) of this section. . . .

(d) Offer of sale to resident organizations . (1) . . . The [public housing authority] must offer to sell the property proposed for demolition or disposition to . . . the resident council . . . of the affected development under at least as favorable terms and conditions as the [public housing authority] would offer it for sale to another purchaser . . . .

24 C.F.R. § 970.13(b), (c), (d)(1).

8

Supp. 409, 415-16 (E.D. Va. 1997). In resolving the dispute, the district court thoroughly examined the requirements of a local resident council as set forth in 24 C.F.R. § 964.115 and various other regulatory provisions. See id. at 412-415. The district court stated it was undisputed that ARC met all of these requirements, and listed many of the activities in which ARC was involved as a resident council. See id. at 413. The district court accepted ARC's argument that ARC cannot be an HA-wide resident council because it does not represent Ladrey. See id. at 414. The district court instead found ARC to be a local resident council entitled to the right of first refusal to purchase the Downtown Homes. See id. at 415. The district court also noted that ARHA had officially recognized ARC as the resident council, and had never officially withdrawn that recognition. The district court held that, under 24 C.F.R. § 964.18(a)(7), ARHA was prohibited from recognizing a competing resident council once a duly-elected resident council had been established. See id. Finally, the district court found that, even if ARC were an HA-wide resident organization, the latest Memorandum of Understanding comprised a secondary, contractual basis on which to find that ARC was entitled to a right of first refusal to purchase the Downtown Homes. See id.

The district court also denied SMHTC's motion to dismiss. See id. at 415-16. The district court reiterated its finding that ARC was a properly organized resident council under the regulations, and rejected ARHA and SMHTC's equitable mootness argument because the regulations prohibited ARHA from recognizing a competing resident council. See id. at 416. The district court therefore ordered that: (1) ARHA recognize ARC as the duly-elected resident council for the Downtown Homes; (2) ARHA be enjoined from selling the Downtown Homes without giving ARC the right of first refusal to purchase the property; (3) ARHA perform its obligations under the Memorandum of Understanding; and (4) costs and reasonable attorneys' fees be paid to ARC. See id.

On October 20, 1997, SMHTC filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). In support of its motion, SMHTC relied on a letter from HUD Assistant General Counsel Michael Reardon that SMHTC argued supported ARHA and SMHTC's position that ARC could not receive the offer of first refusal to purchase the Downtown Homes. The district court rejected

9

the letter in favor of its own interpretation of the statute and regulations, and denied SMHTC's motion to dismiss.

ARHA and SMHTC filed timely notices of appeal from both the district court's orders.

II

The district court granted ARC's motion for summary judgment, and denied ARHA and SMHTC's Rule 12(b)(6) and 60(b)(6) motions, based on three alternative grounds: (1) ARC was the resident council of the Downtown Homes under the statute and applicable regulations entitled to receive the right of first refusal to purchase the Downtown Homes; (2) under 24 C.F.R. § 964.18(a)(7), ARHA is prohibited from recognizing a resident council other than ARC; and (3) the latest Memorandum of Understanding contractually gives ARC the right of first refusal to purchase the Downtown Homes. See Alexandria Resident Council, 979 F. Supp. at 414-15. Because we conclude that 24 C.F.R. § 964.18(a)(7) directly applies, we affirm the district court's judgment in favor of ARC.

We review de novo an order of the district court granting summary judgment. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). We also review de novo the denial of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See Martin Marietta Corp. v. International Telecomm. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1992). Only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" will we affirm such a dismissal. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Finally, we review an order denying a Rule 60(b)(6) motion for abuse of discretion. See Werner v. Carbo, 731 F.2d 204, 206 (4th Cir. 1984).

Section 964.18(a)(7) of 24 C.F.R. states:

10

> In no event shall HUD or a HA recognize a competing resi-
> dent council once a duly elected resident council has been
> established. Any funding of resident activities and resident
> input into decisions concerning public housing operations
> shall be made only through the officially recognized resident
> council.

24 C.F.R. § 964.18(a)(7). The record is clear that, for nearly ten years, ARHA recognized ARC as the official resident council representing the Downtown Homes. Neither ARHA nor SMHTC has asserted that ARHA ever revoked its recognition of ARC as the resident council for the Downtown Homes, nor have they directed us to any law that would authorize ARHA to revoke that recognition. [6] Instead, ARHA and SMHTC argue that ARC is not a duly-formed resident council under the regulations. We disagree.

To receive official recognition from HUD and/or the local HA, a resident council must consist of persons residing in public housing and represent residents residing (1) in scattered site buildings; (2) in areas of contiguous row houses; (3) in one or more contiguous build-ings; (4) in a development; or (5) in a combination of these buildings or developments. See 24 C.F.R. § 964.115(a). In addition, the resident council must meet the following requirements:[7]

> (b) It must adopt written procedures such as by-laws, or
> a constitution which provides for the election of residents to

_____

[6] As the district court's opinion implied, see Alexandria Resident Council, 979 F. Supp. at 415, and as our extensive research has con-firmed, the only time an HA may withdraw recognition under the regula-tions is when HUD requires the HA to withdraw recognition because the resident council either failed to satisfy HUD's minimum requirements for fair and frequent elections, or failed to follow its own established election procedures. See 24 C.F.R. § 964.130(b). However, ARHA and SMHTC have not alleged in this case that ARC's election procedures were in any way flawed.

[7] In addition to the requirements listed below, mandatory election pro-cedures are set forth in 24 C.F.R. § 964.130. However, as we noted above, neither ARHA nor SMHTC have alleged any improprieties in any of ARC's elections.

11

the governing board by the voting membership of the residents residing in public housing, described in paragraph (b) of this section, on a regular basis but at least once every three (3) years. The written procedures must provide for the recall of the resident board by the voting membership. These provisions shall allow for a petition or other expression of the voting membership's desire for a recall election, and set the number of percentage of voting membership ("threshold") who must be in agreement in order to hold a recall election. This threshold shall not be less than 10 percent of the voting membership.

(c) It must have a democratically elected governing board that is elected by the voting membership. At a minimum, the governing board should consist of five (5) elected board members.

The voting membership must consist of heads of households (any age) and other residents at least 18 years of age or older and whose name appears on a lease for the unit in the public housing that the resident council represents.

24 C.F.R. § 964.115(b), (c).

The record is clear that ARC satisfies these requirements. First, ARC represents scattered-site housing developments throughout Alexandria as permitted by 24 C.F.R. § 964.115(a)(5). Second, ARC's articles of incorporation and by-laws establish a five-member board of directors. And third, the board of directors is democratically elected or recalled by the residents of the housing projects ARC represents who are eligible to vote. Thus, ARC was entitled to recognition by ARHA as the duly-elected resident council representing the Downtown Homes, see 24 C.F.R. § 964.18(a) ("A HA shall officially recognize a duly elected resident council as the sole representative of the residents it purports to represent, and support its tenant participation activities."), and over the past decade ARHA has repeatedly recognized ARC as such. Section 964.18(a)(7) is clear that ARHA may not now recognize another resident council that purports to represent the Downtown Homes. Consequently, we conclude that ARC is the

12

only organization that may receive the offer of first refusal to pur-
chase the Downtown Homes.

III

For the reasons stated above, the judgment of the district court is
hereby

<u>AFFIRMED</u>.

13