Kevin Lambert CHAPLIN,
et. al., Plaintiffs,

v.

DU PONT ADVANCE FIBER SYS-TEMS, Du Pont Spruance, Du Pont Textile & Interiors, Inc., Defendants.

No. CIV.3:03 CV 469.

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 25, 2003.

Thomas Hunt Roberts, Thomas H. Roberts & Associates PC, Richmond, VA, Kirk David Lyons, Southern Legal Resource Center Inc., Black Mountain, NC, for Plaintiffs.

Kevin Lambert Chaplin, Chesterfield, VA, Pro se.

David Eugene Rowlette, Petersburg, VA, Pro se.

Stephen Jackson Turley, Chester, VA, Pro se.

Jonathan Paul Harmon, Robert Francis Holland, McGuireWoods LLP, Richmond, VA, James S. Crockett, Jr., Spilman Thomas & Battle PLLC, Charleston, WV, for Defendants.

### MEMORANDUM OPINION

#### (Defendants' Motion to Dismiss and Motion for Sanctions)

HUDSON, District Judge.

This case is before the Court on the Defendants', Du Pont Advance Fiber Systems and Du Pont Textile & Interiors, Inc. (collectively referred to as "Du Pont"), Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure [hereinafter "Rule"] 12(b)(6) and on Defendants' Rule 11 Motion for Sanctions.[1] For the reasons stated herein, the Court will grant Defendants' Motion to Dismiss. The Court will take Defendants' Motion for Sanctions under advisement pending further briefing.

### I. Procedural Background

On May 30, 2003, Plaintiffs Kevin Lambert Chaplin ("Chaplin"), James Philip Jones ("Jones"), Robert Coleman Lewis ("Lewis"), Marvin L. Oliver ("Oliver"), Lynn Eugene Ritenour ("Ritenour"), David Eugene Rowlette ("Rowlette"), and Stephen Jackson Turley ("Turley") filed their original Complaint with this Court. Plaintiffs did not serve the Complaint on Defendants. Instead, on September 17, 2003, they filed an Amended Complaint which they later served on Defendants.

Thereafter, Plaintiffs' local counsel moved to withdraw from the case, leaving the plaintiffs with representation from the Southern Legal Resource Center ("SLRC") in Black Mountain, North Carolina but without representation by an attorney who is admitted to practice in the Eastern District of Virginia. SLRC counsel, Kirk Lyons, Esquire ("Lyons"), who was originally admitted to this Court *pro hac vice*, made repeated efforts to secure new local counsel. This Court also attempted to assist Plaintiffs in the employment of local counsel. These efforts were unsuccessful. Consequently, and in the interests of justice, this Court waived the requirements of Local Rule of Practice 83.1(F) for the remainder of this case. *See* Loc. R. 83.1(F) (E.D.Va.2000).

In the meantime, Defendants had filed the Rule 12(b)(6) Motion to Dismiss that is the subject of this opinion. Plaintiffs, finding themselves without local counsel, filed their responses *pro se* and, in so doing, attempted to adopt the memorandum drafted and signed by Lyons.[2] Defendants then filed a detailed reply, which was accompanied by a Rule 11 Motion for

---

1. "Du Pont Spruance," although listed as a defendant, appears to be the name of a Du Pont-owned building. It has not been and cannot be served because it does not exist as an independent entity. Consequently, this Court's reference to "Du Pont" will only in-clude Du Pont Advance Fiber Systems and Du Pont Textiles & Interiors, Inc.

2. The Court will take up the propriety of Plaintiffs' *pro se* reply in the Rule 11 portion of this opinion.

Sanctions against Lyons. The Court has read all of the pleadings and the caselaw cited within the motions and has reviewed the exhibits attached thereto. Because oral argument will not aid the Court in the decisional process at this time, none will be required.

## II. Factual Background and Plaintiffs' Complaints

According to the First Amended Complaint ("Amended Complaint"), Plaintiffs are all citizens of Virginia and employees of Du Pont. Am. Compl. ¶¶ 1–19. Each Plaintiff is a white male and a "Confederate Southern–American." *Id.* at ¶¶ 1–7. Moreover, all but Turley is a Christian.

Plaintiffs complain that Du Pont illegally discriminated against them in the workplace in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, on the basis of their national origin (Count I), their religion (Count II), and their race (Count III). As a result, Plaintiffs demand $300,000 in compensatory and punitive damages, plus injunctive and declaratory relief.

More specifically, the plaintiffs allege that Du Pont committed a number of acts of direct and indirect discrimination against them. At the root of these, it appears, was Du Pont's decision, in approximately September of 2000, to issue a ban on the wearing or displaying of Confederate symbols on clothing, newspapers, pictures, photographs, and bumper stickers.[3] Am. Compl. ¶ 40. Thereafter, Jones was ordered to discontinue wearing clothing bearing Confederate symbols. *Id.* at ¶ 39. Lewis was told "it was not a good idea" to wear his Confederate belt buckle. *Id.* at ¶ 41. Oliver was ordered to remove a bumper sticker and window decal from his vehicle. *Id.* at ¶ 42. Ritenour was

ordered to remove Confederate bumper stickers from his car "to avoid problems." *Id.* at ¶ 43. Rowlette was told to cease wearing a Confederate t-shirt or risk a reprimand, and he was ordered to sit in the back of the room during an off-site, Du Pont-sponsored multi-cultural workshop because he wore such a shirt. *Id* at ¶ 44. Of his own accord and as a result of the ban, Turley also ceased wearing his Confederate attire. *Id.* at ¶ 45.

Since then, it appears that each of the plaintiffs has had some discussion with his supervisor about the ban. Defendants' Site Staff Manager, Mike Mayberry ("Mayberry"), is said to have responded, at one time, with a declaration to Chaplin that, "I'm discriminating against you and there ain't nothing you can do about it ..." Am. Compl. ¶ 40. On another occasion, Mayberry explained to Turley that the ban was imposed because "the Confederate flag has been declared a hate symbol, is used by the Klan, represents slavery and is offensive to some black employees." *Id.* at ¶ 45. Thereafter, Plaintiffs told their supervisors, managers, and/or co-workers that the Du Pont ban discriminates against them based on their national origin, their religion, and their race. *Id.* at ¶ 46.

Additionally, Plaintiffs Oliver, Lewis, and Jones aver that in July of 2001, the defendants denied their request for approval of a "Heritage Preservation Network," which was to be a network for Confederate Southern Americans. *Id.* at ¶ 38. Du Pont apparently supports other such networks, similar in nature, for groups of women, African American, Asian American, Italian American, Greek American, Irish American, Native American,

---

**3.** As Plaintiffs concede, Du Pont did make an exception for state-issued vanity tags bearing the Sons of Confederate Veterans logo. Am. Compl. ¶ 40.

Hispanic, and gay and lesbian employees. *Id.* at ¶¶ 38, 48, 49.

As a result of Du Pont's actions, Plaintiffs contend that racial tensions have increased in the plant and that they fear the "potential and dangerous result of this tension." Am. Compl. ¶ 50. Further, Du Pont has caused them to "fear the loss of their job and career opportunities," and to suffer from humiliation, embarrassment, and emotional distress. *Id.*

### III. Motion to Dismiss

On October 14, 2003, Du Pont filed its Rule 12(b)(6) motion to dismiss the Amended Complaint. Pursuant to Rule 12(b)(6), dismissal is appropriate any time a plaintiff "fail[s] to state a claim on which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal pursuant to Rule 12(b)(6) should only be awarded when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Martin Marietta Corp. v. International Telecomm. Satellite Org.,* 991 F.2d 94, 97 (4th Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir. 1996) (*en banc*). When reviewing a motion to dismiss, the Court must accept the plaintiff's factual allegations as true and view the allegations in the light most favorable to the plaintiff. *Martin Marietta,* 991 F.2d at 97 (citing *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)). *See also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).

### A. Employment Discrimination and Adverse Employment Action

Plaintiffs aver, throughout their Amended Complaint, that by and through its actions, Du Pont violated 42 U.S.C. § 2000e–2(a)(1) in that Defendants discriminated against Plaintiffs because of their national origin, their religion, and their race. Defendants have moved to dismiss each count of Plaintiffs' Amended Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In support of their motion, Du Pont contends, first, that Plaintiffs have alleged no adverse employment action such as would create an actionable injury under Title VII. This Court must agree.

In the context of a Title VII case, damages may only be awarded to an employee when it is alleged that the employer took an adverse employment action against the employee for a discriminatory reason. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 523–24, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Additionally, in order to satisfy the standing requirements of Article III of the United States Constitution, a plaintiff must show that, as a result of the employer's actions, he suffered an "injury in fact" that is both concrete and particularized and actual or imminent. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted). To be actionable, the injury cannot be conjectural or hypothetical. *Id.*

As Title VII applies in the context of this case,

It shall be an unlawful employment practice for an employer -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. § 2000e–2(a)(1). Accordingly, a complainant can demonstrate an "adverse employment action" by showing, for example, that he was the subject of a discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunity for promotion. *See Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981). Thus, whether the claim is discrimination based on race, religion, or national origin, to qualify as an actionable injury, a plaintiff must allege that his employment status suffered. *See Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017–18 (4th Cir.1996); *Keene v. Thompson*, 232 F.Supp.2d 574, 580 (M.D.N.C. 2002); *Ali v. Alamo Rent–A–Car, Inc.*, 8 Fed.Appx. 156, 159 (4th Cir.), *cert. denied*, 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241 (2001).[4]

■ Here, Plaintiffs do not allege a termination or demotion, nor do they contend that they suffered a loss of compensation or benefits. Plaintiffs merely posit that, if they were to display Confederate symbols, they *could* be reprimanded, and they *could* lose their jobs and career opportunities. *See* Am. Compl. ¶¶ 44, 50, 71, 76, 81. Thus, Plaintiffs' injury is speculative and, as such, is insufficient to confer standing upon them under Title VII. Moreover, although Plaintiffs are clearly annoyed and offended by Du Pont's ban, "Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir.1999).

Consequently, inasmuch as Counts I, II, and III of the Amended Complaint require proof of an actionable adverse employment action, Plaintiffs' claims fail to aver a cause of action upon which this Court can grant them relief, and each will be dismissed.[5]

## B. Employment Discrimination, National Origin (Count I)

In Count I of the Amended Complaint, Plaintiffs aver that, by imposing a ban on the display of Confederate symbols and by perpetuating a "discriminatory and offensive stereotype" of Confederate Southern–Americans (Am.Compl.¶ 50.), Du Pont has illegally discriminated against Plaintiffs on the basis of their national origin (1) by treating them disparately and (2) by creating conditions that are sufficiently severe and pervasive so as to create a hostile work environment. In response, Defendants urge this Court to dismiss Count I because it fails to allege both discrimination against a protected class of individuals and an actionable adverse employment action. In both instances, Defendants are correct.

■ In a recent opinion, the United States Supreme Court held that a complaint in an employment discrimination case need not allege specific facts establishing a *prima facie* case of discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Instead, the plaintiffs need only set forth sufficient facts to allege each element of each of their claims. *Id.* On the other hand, "[a] court may dismiss a complaint ... if it is clear that no relief could be granted under any set of facts

---

4. Pursuant to Local Rule 36, the Fourth Circuit Court of Appeals disfavors citation to unpublished dispositions. Loc. R. 36(c) (4th Cir.2003). The *Ali* disposition, however, is on-point with the current case and stands for the proposition that, even for cases alleging religious discrimination, the plaintiff must aver that he or she was the subject of some

cognizable adverse employment action. *Ali*, 8 Fed.Appx. at 158.

5. Count IV is a request for declaratory relief whose survival depends upon Counts I, II, and/or III. Thus, with the dismissal of the first three counts, Count IV must be dismissed as well.

that could be proved consistent with the allegations." *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229.

■ Here, in order to state a claim under Title VII for national origin-based discrimination, Plaintiffs would first have to prove that the "national origin group" to which they belong is a protected class. *See, e.g., Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455 (4th Cir.1989) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, (1973)). This Court finds, as did the Fourth Circuit Court of Appeals in an unpublished opinion, that "Confederate–American" is not a protected class. *See Terrill v. Chao,* 31 Fed.Appx. 99, 100 (4th Cir.), *cert. denied,* 537 U.S. 823, 123 S.Ct. 108, 154 L.Ed.2d 32 (2002).[6] Accordingly, in addition to finding that Count I must be dismissed for failure to allege an actionable adverse employment action, as discussed *supra,* this Court must dismiss Count I for failure to aver that Defendants discriminated against a protected class of individuals.[7]

6. Although the *Terrill* opinion is unpublished and, therefore, lacks precedential value, this Court finds it especially illustrative inasmuch as Plaintiffs' counsel, Lyons, argued *Terrill* before a panel of the Fourth Circuit which ruled against him on the national origin issue.

7. The Court finds it disturbing, especially in light of the requirements of Rule 11, that Lyons agreed to include Count I's national origin claim in the Amended Complaint despite the Fourth Circuit's ruling in *Terrill.*

8. The Fourth Circuit does not appear to recognize the "hostile work environment" theory for religious discrimination. Regardless, in order to succeed in properly pleading a claim of hostile work environment, Plaintiffs would have to aver that the alleged adverse employment action was: (1) unwelcome; (2) based on their religious beliefs; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) sufficient to give some basis for imposing liability on the employer. *See,*

## C. Employment Discrimination, Religion

In Count II of the Amended Complaint, Plaintiffs aver that Du Pont illegally discriminated against them on the basis of their religion, which is Christianity, (1) by treating them disparately, (2) by failing to accommodate them, and (3) by creating conditions that are sufficiently severe and pervasive so as to create a hostile work environment. Under any of these theories, Defendants argue, Count II must be dismissed for failure to state a claim upon which relief can be granted.

■ Title VII makes it unlawful for an employer to discriminate against any individual employee because of his religion. 42 U.S.C. § 2000e–2. Most courts have recognized that employees may utilize two theories in asserting religious discrimination claims. *See Chalmers,* 101 F.3d at 1017 (citing *Mann v. Frank,* 7 F.3d 1365, 1368–70 (8th Cir.1993)). One is "disparate treatment," and the other is "failure to accommodate." *Id.*[8]

*e.g., Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 772 (4th Cir.1997) (citation omitted) (setting forth the elements for hostile work environment in the context of a sex discrimination case).

As discussed, *infra,* Plaintiffs do not aver, nor could they, that Du Pont's imposition of the flag ban was in any way based upon their Christianity. Instead, it appears that the ban was imposed on all employees, regardless of their religious beliefs or lack thereof. Plaintiff Turley's disavowal of Count II illustrates this point precisely. Moreover, taken in the aggregate, Plaintiffs' claims do not allege conduct that was "sufficiently severe or pervasive [so as] to alter the conditions of [their] employment." *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal quotation omitted). For all these reasons, this portion of Count II will be dismissed for failure to state a claim on which relief can be granted.

### 1. Disparate Treatment Based on Religion

■ To prove a claim of disparate treatment, an employee must first allege that the employer treated him differently than other employees because of his religious beliefs. *Chalmers*, 101 F.3d at 1017. Thus, the complainant must put forth "a set of facts which would enable the factfinder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination." *See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir.1995) (stating the standard adopted in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

Here, the Court notes that in Count II Plaintiffs contend that Du Pont discriminated against them on the basis of their Christianity. In Plaintiffs' words,

> [B]eing a Confederate Southern–American is in many ways tied up with being a Christian. Plaintiffs' display of the Confederate flag was to them (save for [Plaintiff] Turley [who does not join in Count II]) the equivalent of the display of a Christian cross, Crucifix or a Jewish Star of David. The Confederate flag is a venerated religious symbol to Plaintiffs because it is emblazoned with the cross of St. Andrew, one of Christ's disciples and the patron Saint of Scotland. The cross also forms the Greek letter "X" which is an ancient symbol for Christ.

Am. Compl. ¶ 78.

This Court has no authority to determine what is or is not a religion, and it has no legal formula by which to measure the truth or philosophical acceptability of Plaintiffs' spiritual beliefs. *See United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) (the proper judicial task is limited to determining if a claimant's beliefs are sincerely held and whether they are, in his own scheme of things, religious); *United States v. Lee*, 455 U.S. 252, 257, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (courts may not evaluate religious truth). On the other hand, under any theory of religious discrimination, the complainant must begin by averring that, as a result of the defendant's actions, he suffered some adverse employment action. *Chalmers*, 101 F.3d at 1019. As this Court has already determined, Plaintiffs have made no such allegation. Thus, as a matter of law, with respect to their claim of disparate treatment based on religion, Plaintiffs have failed to state a claim on which relief can be granted, and Defendants' motion to dismiss will be granted.

### 2. Failure to Accommodate Plaintiffs' Religion

■ In addition to the foregoing pleading deficiency, Plaintiffs nowhere claim that they requested or were denied any particular accommodation.[9] *See* Am. Compl. ¶¶ 46, 76. Instead, Plaintiffs suggest that Defendants "can easily accommodate" Plaintiffs' religious practices. *Id.* at ¶ 76. When a complainant fails to request a religious accommodation, thereby declining to give his employer an opportunity to alleviate the conflict, he has not pled an accommodation claim upon which relief can be granted. *Chalmers*, 101 F.3d at 1019–20. Accordingly, in addition to Count II's other defects, the accommodation claim will be dismissed.

---

9. Nor do they allege that their Christian beliefs require them to display the Confederate flag in the workplace. For the purposes of a Rule 12(b)(6) motion to dismiss, however, the Court does not find this deficiency to be fatal.

### D. Employment Discrimination, Race

 In Count III of the Amended Complaint, Plaintiffs aver that Du Pont has illegally discriminated against them on the basis of their race (1) by treating them disparately, and (2) by creating conditions that are sufficiently severe and pervasive so as to create a hostile work environment. Of course, because Plaintiffs have failed to allege an adverse employment action, this claim, too, must fail.

Regardless, Plaintiffs contend that "Defendants discriminate against Plaintiffs . . by making the racist presumption that a person displaying the Confederate flag must be a racist, extremist or white supremacist." Am. Compl. ¶ 83. Plaintiffs do not claim that Du Pont's ban adversely affects all Caucasians; its negative impact only befalls Caucasian Confederate Southern Americans. Nor do Plaintiffs claim that all Confederate Southern Americans are Caucasian. On the contrary, this Court finds no logical connection between Du Pont's alleged discrimination and Plaintiffs' race. Consequently, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in Count III. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *Martin Marietta,* 991 F.2d at 97. Pursuant to Rule 12(b)(6), therefore, the Court will dismiss Count III.

### IV. Defendants' Rule 11 Motion for Sanctions

 Defendants' Motion for Sanctions presents this Court with two questions. First, did Plaintiffs' counsel, Lyons, violate Rule 11 by filing both the Amended Complaint and Plaintiffs' *pro se* responses to the Motion to Dismiss? And if so, what sanctions are appropriate?

According to Rule 11:

(a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by the attorney, shall be signed by the party . . . .

(b) Representations to Court. By presenting to the court . . . a pleading . . . an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

. . .

> (2) the claims . . . therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed.R.Civ.P. 11(a) & (b). Here, two actions on the part of Plaintiffs' counsel deserve particular attention. The first is counsel's attempt to re-litigate Count I of the Amended Complaint, knowing that the Fourth Circuit Court of Appeals declined to recognize "Confederate Southern–American" as a protected national origin. The second is counsel's attempt to skirt Local Rule 83.1, which prohibits the filing of pleadings signed by an attorney who is not admitted to practice in the Eastern District of Virginia. Loc. R. 83.1(D)(3) (E.D.Va.2000).

Each of these actions deserves closer scrutiny. Therefore, the Court will take Defendants' motion for sanctions under advisement. Plaintiffs will be invited to file a response to Defendants' request for sanctions, and Defendants will be allowed to reply. In preparing these memoranda, the parties must briefly address each of the

factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974), which was adopted by the Fourth Circuit Court of Appeals in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). *See also Daly v. Hill,* 790 F.2d 1071, 1076 (4th Cir.1986).

After the briefing is complete, the Court will hear oral argument on the propriety of awarding and/or the amount to be awarded as sanctions.

An appropriate Order will accompany this Opinion.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.